IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DONNA KINSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:16-cv-00058 |
| ) | |
| VIRGINIA ELECTRIC AND POWER ) | By: Elizabeth K. Dillon |
| COMPANY, ) | United States District Judge |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This case is before the court on plaintiff Donna Kinsey's motion to remand and request for fees. The motion has been fully briefed, and a hearing was held on October 27, 2016. Having considered the parties' briefs and arguments, as well as the applicable law, the court finds that subject matter jurisdiction is lacking, and will therefore remand this case to state court, but will decline to award costs.

I. BACKGROUND

This case arises from defendant Virginia Electric and Power Company's (Dominion) installation of two "smart meters"—electrical metering devices which transmit data through radio frequency radiation (RF or RFR)—on Kinsey's property. (Compl. ¶¶ 6, 12, Dkt. No. 1-1.) Kinsey claims that as a result of RF emissions from a meter placed on the outside of her house adjacent to living areas, she suffered and continues to suffer symptoms including mood swings, trouble concentrating, insomnia, memory loss, ringing in her ears, and inexplicable crying spells. (*Id.* ¶¶ 6–8, 22.) Kinsey also alleges that Dominion concealed the installation of the smart meter, and that Dominion misled her by telling her both that it had been disabled and that it was working properly. (*Id.* ¶¶ 17–21, 45, 49, 57, 61–62, 72–73.)

1

Kinsey's complaint discusses the dangers of RF radiation and its potential effects on those exposed to it. (*See generally id.*) Kinsey notes that while the Federal Communications Commission (FCC) regulates RF emissions, its regulations "do not protect from biological harm caused by low or 'non-thermal' levels of microwaves." (*Id.* ¶ 26.) Accordingly, Kinsey suggests, those regulations are insufficient to protect people from harm by RF emissions: they "can show a device to be unsafe, but cannot prove that a device is safe." (*Id.* ¶¶ 27–28.)

Dominion filed a notice of removal on September 1, 2016, asserting federal question jurisdiction under 28 U.S.C. § 1331. (Notice of Removal ¶ 7, Dkt. No. 1.) In its notice, Dominion reasoned that wireless technology is subject to federal regulation and that the FCC has promulgated specific regulations governing RF emissions from wireless communications devices. (*Id.* ¶ 6.) Accordingly, Dominion claims, "the standard of care applicable to the installation and operation of smart meters, the maximum permissible exposure limits for RF emissions, and any applicable defenses to Plaintiff's causes of action, including but not limited to federal preemption, are all governed by federal law." (*Id.* ¶ 7.)

Kinsey moved to remand, arguing that her complaint asserts only state law personal injury claims; that nothing in the FCC's regulations authorizes negligently installing, operating, or maintaining a smart meter; and that in this case federal preemption is merely a defense, insufficient to invoke this court's jurisdiction, and the case must be remanded. (*See generally* Br. Supp. Mot. Remand, Dkt. No. 11.) Kinsey also seeks $3,500 in costs associated with its motion to remand under 28 U.S.C. § 1447(c).

2

## II.  DISCUSSION

### A.  Remand Standard

Under 28 U.S.C. § 1441, parties may remove cases over which the district courts of the United States have original jurisdiction, including those "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  At issue here is whether Kinsey's claims "aris[e] under" federal law, such that this court may exercise removal jurisdiction.  *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005).  As the party seeking removal, Dominion bears the burden of establishing federal jurisdiction.  *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).  Because removal implicates "significant federalism concerns," *Dixon v. Coburg Dairy*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting *Mulcahey*, 29 F.3d at 151), removal jurisdiction is narrowly construed, and courts should resolve doubts about removal jurisdiction in favor of remand.  *Pinney*, 402 F.3d at 442; *Mulcahey*, 29 F.3d at 151.

### B.  Analysis

Before the hearing on this motion, the court drew the parties' attention to *Pinney v. Nokia*, 402 F.3d 430 (4th Cir. 2005), in which the Fourth Circuit held that certain claims based on RF emissions from cell phones did not arise under federal law.  Opposing the motion to remand in that case, Nokia argued that the claims arose under federal law by virtue of two doctrines: the substantial federal question doctrine and the doctrine of complete preemption.  *Id.* at 441–42.  Like the *Pinney* defendants, Dominion apparently relies on both of these doctrines, and the court will take them in turn.

#### 1. Substantial Federal Question

In determining whether a claim arises under federal law for purposes of 28 U.S.C. § 1331, courts apply the "well-pleaded complaint rule."  *E.g. Virginia ex rel. Hunter Labs., L.L.C.*

3

*v. Virginia.*, 828 F.3d 281, 286 (4th Cir. 2016).  Under that rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 (1987); *see Hunter Labs.*, 828 F.3d at 286 (noting that "the federal court may examine only that which 'necessarily appears in the plaintiff's statement of his own claim' in assessing whether there is jurisdiction over the action") (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10 (1983)).  Where, as here, state law creates the plaintiff's causes of action, federal jurisdiction exists only if the claims fall within "the small class of 'cases in which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims.'" *Pinney*, 402 F.3d at 442 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988)).  To satisfy this standard, a federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Hunter Labs.*, 828 F.3d at 287 (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013)); *see also Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302–03 (4th Cir. 2016).

"[A] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in original) (quoting *Dixon*, 369 F.3d at 816).  If, looking to the elements of the claims asserted, "the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331."

4

*Dixon*, 369 F.3d at 817; *see Gunn*, 133 S. Ct. at 1066–67 (analyzing elements of a legal malpractice claim); *Pinney*, 402 F.3d at 443–45.

In *Pinney*, a class of cell phone users sued Nokia and other entities involved in the manufacture and sale of cell phones, claiming that Nokia cell phones emitted unsafe levels of RFR, and that Nokia had hidden this from consumers. *Id.* at 439. Among other things, plaintiffs claimed that Nokia violated various consumer protection statutes by deceiving consumers; that Nokia defrauded its consumers by misleading them about the safety of cell phones; and that Nokia was negligent by failing to research the adverse health effects of RF radiation, misrepresenting that cell phones were safe, suppressing evidence to the contrary, failing to warn consumers about potential health risks, and failing to provide headsets and instructions encouraging their use. *Id.* at 443–45. Nokia removed the case, and the district court, interpreting the claims as "a disguised attack on the FCC's RF radiation standards," held that the claims necessarily depended on the resolution of a substantial federal question. *Id.* at 441.

Reversing the district court, the Fourth Circuit held that none of the plaintiffs' claims arose under federal law. After analyzing the elements of each of the plaintiffs' claims, the court determined that the claims depended only on the resolution of questions of state law and, therefore, remand was proper. *Id.* at 445. The district court, the Fourth Circuit held, had improperly predicted that Nokia would raise a federal preemption defense which the plaintiffs would have to rebut, *id.* at 445–46: this federal issue was merely "lurking in the background," not raised on the face of the complaint, and it was therefore insufficient to confer federal jurisdiction under the well-pleaded complaint rule. *Id.*

As in *Pinney*, whether Kinsey raises a substantial question of federal law turns on the elements of her claims. In count one of her complaint, entitled "failure to warn and/or

5

concealment of a potentially dangerous condition," Kinsey claims that Dominion failed to warn her of potential adverse health effects of smart meters and concealed the installation of the smart meter. (Compl. ¶¶ 46, 49–50.) In order to prove her failure to warn claim, Kinsey must show that Dominion: (1) knew or had reason to know that the chattel was or was likely to be dangerous for the use for which it was supplied; (2) had no reason to believe that those for whose use the chattel was supplied would realize its dangerous condition; and (3) failed to exercise reasonable care to inform them of its dangerous condition or of the facts which made it likely to be dangerous. *Funkhouser v. Ford Motor Co.*, 736 S.E.2d 309, 313 (Va. 2013); *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 634 (Va. 1992); *Featherall v. Firestone Rubber & Tire Co.*, 252 S.E.2d 358, 365 (Va. 1979).

Count two asserts a claim for actual or constructive fraud. Kinsey claims that Dominion constructively represented to Kinsey that metering of her electric usage would be accomplished through the use of traditional meters and defrauded her by replacing traditional meters with smart meters. (Compl. ¶¶ 54–57.) Kinsey also claims that Dominion misled her by representing that the smart meters were safe; by telling her that the meter on her house could not be removed or could only be moved at her expense; and by telling her that the transmitting function of the smart meter had been disabled, when it had not been. (*Id.* ¶¶ 58–59, 61–62.) In order to prevail on a claim for actual fraud, Kinsey must prove: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 (Va. 2003); *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in

6

damage to the one relying on it." *Cohn*, 585 S.E.2d at 582 (quoting *Evaluation Research*, 439 S.E.2d at 390).

Finally, count three asserts that Dominion was negligent by installing a potentially harmful device on Kinsey's residence without warning; by failing to conduct or fund adequate studies about the safety of smart meters; by failing to investigate alternative locations for the meter; by resisting Kinsey's requests to have the meter removed; and by failing to disable the meter. In order to establish actionable negligence, Kinsey must show "the existence of a legal duty, a breach of the duty, and proximate cause resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *Fox v. Custis*, 372 S.E.2d 373, 375 (Va. 1988).

As in *Pinney*, "the elements of each of [these] claims depend only on the resolution of questions of state law." *Pinney*, 402 F.3d at 445. Although *Pinney* did not discuss Virginia law—that case arose from class actions in Georgia, Louisiana, Maryland, New York, and Pennsylvania—the elements of Kinsey's claims are virtually identical to those raised in *Pinney*. *Id.* at 439, 443–446). While Kinsey's complaint suggests that FCC regulations are insufficient to render smart meters entirely safe (*see* Compl. ¶¶ 26–28), the claims themselves do not require proof that those regulations are insufficient. Each claim can be sustained on a theory that in no way relies on compliance or non-compliance with FCC regulations. *See Dixon*, 369 F.3d at 817; *see also Pinney*, 402 F.3d at 445 (noting that the district court "should have considered only whether a disputed question of federal law is an essential element of one of the well-pleaded state claims"). Although a federal preemption defense may indeed be "lurking in the background" of these claims, the well-pleaded complaint raises no substantial federal question, and accordingly this case must be remanded. *Pinney*, 402 F.3d at 446 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 117 (1936)).

7

## 2. Complete Preemption

The court now turns to Dominion's preemption argument. Central to the court's analysis here is the distinction between ordinary and complete preemption. Ordinary preemption doctrines—like conflict and field preemption—are defenses which do not give rise to federal jurisdiction. *E.g. Barbour v. Int'l Union*, 594 F.3d 315, 328 (4th Cir. 2010) (quoting *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005)). This is so even when the preemption issue is central to the case. *See Barbour*, 594 F.3d at 328 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, *including the defense of pre-emption*, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question at issue.") (emphasis in original) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Complete preemption, on the other hand, is a jurisdictional doctrine, *Lontz*, 413 F.3d at 441, which "'converts an ordinary state common law complaint into one stating a federal claim.'" *Pinney*, 402 F.3d at 449 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "[C]omplete preemption only applies in a "very narrow" range of cases," *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 701 (4th Cir. 2015), where a federal statute entirely displaces state law such that "there is 'no such thing' as a state action." *Barbour*, 594 F.3d at 329 (quoting *Lontz*, 413 F.3d at 441). "To remove an action on the basis of complete preemption, a defendant must establish that the plaintiff has a 'discernible federal claim' and that 'Congress intended the federal claim to be the exclusive remedy for the alleged wrong.'" *Pinney*, 402 F.3d at 449 (quoting *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)). That intent "must be clear in the text of the statute." *Barbour*, 594 F.3d at 329 (quoting *Lontz*, 413 F.3d at 441). The Fourth Circuit recognizes a presumption against complete preemption, and "'the Supreme Court

has only approved its use in three areas,' none of them pertinent to the Communications Act,"
*Johnson*, 781 F.3d at 701 (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998)).

Although Dominion cites FCC regulations limiting RF emissions in telecommunications—47 C.F.R. §§ 27.52 and 1.1310—these do not overcome the presumption against complete preemption here. In *Pinney*, the Fourth Circuit rejected the claim that the Federal Communications Act, which the regulations Dominion cites implement, displaced state law claims nearly identical to Kinsey's. 402 F.3d at 457–58. The court reaffirmed this principle in *Johnson*, albeit on different facts. *See Johnson*, 781 F.3d at 703 (finding that the FCA did not completely preempt suit by prison guard against wireless service providers after prisoner used a cell phone to order him shot). Both of those cases relied on the savings clause of the FCA, which states that "[n]othing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." 47 U.S.C. § 414. That provision "counsels against a finding that Congress intended to sweep aside all state claims in a particular area," and is still effective. *Johnson*, 781 F.3d at 703. Accordingly, the court sees no reason to depart from the Fourth Circuit's analysis in *Pinney*.

## C. Attorney's Fees

Under 28 U.S.C. § 1447(c),[1] the court has discretion to award "just costs" when remanding a case. *See In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). As the Supreme Court has indicated,

> the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

---

[1] Dominion's argument that attorney's fees are inappropriate here because Kinsey didn't comply with Rule 11 is misplaced. Although Rule 11 requires that a motion for sanctions be made separate from other motions, 28 U.S.C. § 1447(c) does not.

9

removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Although the court determines that *Pinney* controls here, and that removal was improper, the court will decline to award fees.  Unlike the complaints in *Pinney*, Kinsey's complaint contains an express criticism of FCC regulations on RF emissions.  *See Pinney*, 402 F.3d at 445 ("Although the court acknowledged that the complaints contain no allegations attacking the federal RF radiation standards . . . .").  The substantial federal question and federal preemption doctrines are complex, and have historically been prone to confusion.  *See Gunn*, 133 S. Ct. at 1065 ("In outlining the contours of [the substantial federal question doctrine], we do not paint on a blank canvas.  Unfortunately, the canvas looks like one that Jackson Pollock got to first."); *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 948–49 (9th Cir. 2014) ("The relationship between 'complete preemption' and defensive preemption is not entirely clear, although we agree that the complete preemption doctrine must be distinguished from ordinary preemption.") (internal quotations omitted); *Lontz*, 413 F.3d at 440 ("While [complete and ordinary preemption] are linguistically related, they are not as close kind jurisprudentially as their names suggest.").  Dominion is correct that wireless communications and RF emissions are in fact heavily regulated by the FCC, *see Farina v. Nokia, Inc.*, 625 F.3d 97, 105–06 (3d Cir. 2010), and that extensive regulation has been the basis for applying ordinary preemption in the past.  *E.g.*, *Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050, 1053 (C.D. Cal. 2008).  Therefore the court does not find Dominion's removal objectively unreasonable, and it will decline to award fees.

## III. CONCLUSION

For the foregoing reasons, Kinsey's motion to remand will be granted, and this case will be remanded to state court and stricken from the active docket of this court. An appropriate order will be entered.

The clerk shall serve copies of this memorandum opinion and the accompanying order on all counsel of record.

Entered: December 22, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge